**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

Plaintiff

vs. 3:07-cr-234-J-33TEM

HASSAN K. MUHAMMAD,

Defendant.

---

**REPORT AND RECOMMENDATION**[1]

This matter is before the undersigned on Defendant's Motion to Suppress Physical Evidence and Statements (Doc. #48, Motion) and the government's response in opposition thereto (Doc. #53). A hearing was held before the undersigned on March 14, 2008. A transcript of the proceedings has been filed (Doc. #55). Based on the testimony and evidence presented at the hearing, the undersigned recommends that Defendant's Motion be **DENIED** for the following reasons.

## I. Background

On September 5, 2007, a grand jury returned a single count indictment charging Hassan Karim Muhammad ("Defendant") with being a felon in possession of a firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Doc. #1). Defendant was indicted by the grand jury following his arrest by a police officer of the Jacksonville, Florida Sheriff's Office,

---

[1] Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(a); Local Rule 6.02(a), United States District Court for the Middle District of Florida. The parties, however, have agreed to a shortened response period of EIGHT (8) DAYS (Doc. #55 at 100).

Isaac Brown ("Officer Brown").

On July 3, 2007, Officer Brown, while on patrol in a marked police vehicle, slowly approached the intersection of West 26th Street and Chase Avenue on the north side of Jacksonville, Florida (Doc. #55 at 19).[2] Officer Brown testified that, as he approached the aforementioned intersection, he observed Defendant stopped at a stop sign with his car window rolled down (Doc. #55 at 19). Officer Brown stated that he saw a female, who he knew to be a prostitute, approach Defendant's vehicle and begin a conversation with Defendant (Doc. #55 at 19, 42). At that point, Officer Brown made eye contact with both the female and the Defendant and pointed at the female, motioning for her to get away from Defendant's vehicle (Doc. #55 at 19, 42). Officer Brown testified that the female responded to his gesture and quickly walked away from Defendant's vehicle (Doc. #55 at 43).

Officer Brown further testified that Defendant, immediately upon seeing him, put his car in reverse, backed up "very fast," and proceeded to drive erratically in the wrong direction of traffic toward some abandoned apartments located at 1196 West 26th Street (Doc. #55 at 20-21, 43, 57). Officer Brown stated that, as Defendant backed up in the opposite direction of traffic, he crossed the center-lane of the roadway several times (Doc. #55 at 43-44, 57). Upon observing Defendant's erratic and reckless driving behavior, Officer Brown activated the lights on the top of his patrol vehicle and followed Defendant (Doc. #55 at 44).

[2] The undersigned notes that Officer Brown testified that he has worked in the vicinity of the intersection of West 26th Street and Chase Avenue for twenty years and that it is located in a high crime area, which is "littered with drugs [and] prostitution" (Doc. #55 at 35-38).

Once Defendant reached the abandoned apartment building, Defendant stopped his vehicle near the entrance, exited the vehicle with its engine still running, and ran toward the abandoned apartments with a pair of brown shorts in his hand (Doc. #55 at 45, 47). Officer Brown testified that he ordered Defendant to stop and after Defendant did not respond to his order to stop he pursued Defendant on foot (Doc. #55 at 45). Officer Brown testified that during the pursuit he neither lost sight of Defendant, nor drew his service weapon, and that he saw Defendant throw the pair of shorts on the ground behind an abandoned apartment (Doc. #55 at 46 and 84).

Once Defendant dropped the shorts, Defendant then responded to Officer Brown's order to stop by turning around and walking towards Officer Brown with his hands up in the air (Doc. #55 at 45-46). Thereafter, Officer Brown detained Defendant in his patrol car (without handcuffing him) and went to locate the shorts (Doc. #55 at 47 and 67). Officer Brown found the shorts behind the apartment building where he saw Defendant drop them (Doc. #55 at 47). Upon retrieving the shorts, Officer Brown found them to be slightly wet (it was raining at the time) with a loaded revolver concealed within them (Doc. #55 at 47).

After retrieving the shorts and firearm, Officer Brown returned to his patrol car. Officer Brown testified that Defendant was in a panic state and began screaming that he was a convicted felon and that he did not want to be charged with possessing a firearm (Doc. #55 at 48-49, 83-88). Specifically, Officer Brown testified that Defendant made the following statements: (1) "I can't go back to prison;" (2) "I'm a convicted felon;" and, (3) "I know I am going to jail because my license is suspended, but don't charge me with that gun" (Doc. #55 at 86).

Officer Brown stated that he then told the Defendant to be quiet and placed him under arrest (Doc. #55 at 85-88). After arresting Defendant, Officer Brown stated that he advised Defendant of his constitutional rights by reading him *Miranda* warnings from a card (Doc. #55 at 48, 85). Even after advising Defendant of his right to remain silent, however, Officer Brown testified that Defendant proceeded to make the same incriminating statements he made before being read *Miranda* warnings, *supra* (Doc. #55 at 67).

## II. Discussion

Defendant moves to suppress both the seized firearm and the incriminating statements he made to Officer Brown. Defendant did not testify at the hearing and the undersigned finds Officer Brown's testimony credible.

Concerning the seized firearm, the government argues Plaintiff does not have standing to challenge the seizure of the firearm because he abandoned the property when he threw the shorts containing the firearm (Doc. #53 at 3-4). Defendant counters (without admitting ownership of the firearm) by arguing the initial stop by Officer Brown violated his Fourth Amendment right to be free from an unreasonable seizure (Doc. #48 at 2-5). Defendant maintains that there was nothing about his behavior that could have given Officer Brown reasonable suspicion to conduct an investigatory stop (Doc. #55 at 95). The undersigned finds Defendant's arguments unpersuasive for the following reasons.

The United States Supreme Court has found that a police officer may, consistent with the Fourth Amendment, briefly stop an individual who appears to be engaged in criminal activity if the officer has a reasonable and articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

When determining whether reasonable suspicion exists, "the court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (*internal quotation marks omitted*). Though there must be an objective basis for suspecting wrongdoing, officers may assess the facts in light of their unique training, expertise, and experience in the field. *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002). Moreover, reasonable suspicion exists if the cumulative information of which the detaining officer is aware suggests criminal activity, even if each fact, viewed in isolation, can be given an innocent explanation. *Id*.

In *Illinois v. Wardlow*, the United States Supreme Court stated:

> An individual's presence in an area of expected criminal activity, *standing alone*, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we [the United States Supreme Court] have previously noted the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis.

528 U.S. 119, 124 (2000) (*emphasis added*) (*internal citations omitted*).

In the case at bar, Officer Brown's articulable reason for suspecting Defendant of engaging in criminal activity was not merely the fact Defendant was talking to a female in an area known for prostitution solicitation, it was Defendant's unprovoked flight upon noticing him. The undersigned finds Defendant's flight gave Officer Brown reasonable suspicion to believe criminal activity was afoot. "Headlong flight–wherever it occurs–is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow,* 528 U.S. at 124.

Defendant makes much of the fact that reversing in the opposite direction of traffic is not, in and of itself, illegal under the traffic laws of Florida (Doc. #55 at 57-61). The undersigned, however, finds that Defendant's evasive and erratic driving behavior provided Officer Brown the reasonable suspicion required to conduct a brief investigatory stop–regardless of whether Defendant violated a state traffic law.

> Even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity.

*Id*. at 125 (*internal citations omitted*).

Accordingly, the undersigned finds Defendant's headlong flight and erratic driving behavior provided the requisite reasonable suspicion for Officer Brown to conduct a lawful investigatory stop in order to resolve the ambiguity in Defendant's behavior.

Concerning the issue of standing, the primary case Defendant relies upon to support his contention that he has standing to object to the firearm (even though he does not admit ownership of the firearm) is *U.S. v. Lara*, 638 F.2d 892 (5th Cir. 1981).[3] In *Lara*, several narcotics officers stopped a man in an airport who they believed might be a drug courier. *Id*. The individual in *Lara* aroused the suspicions of the narcotics officers because he bought a one-way airline ticket in cash and then proceeded to a secluded part of the airport near the rear of an elevator shaft with a leather handbag. *Id*. at 894-96. The officers in *Lara* approached the individual and asked him for identification. *Id*. After the individual was

---

[3] Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

unable to produce identification, one of the officers asked the individual what his real name was, to which, the individual responded with a name that was not the name on his airline ticket. *Id*. at 894. The officers then asked the individual what was in the handbag and the individual responded that the handbag was not his–effectively abandoning the property. *Id*.

The Fifth Circuit remanded the case because it believed there were not enough facts in the record to determine whether reasonable suspicion existed for the officers in that case to make the initial investigatory stop. *Id*. at 898. The court held that if an unconstitutional stop occurred before the suspect's disclaimer of ownership then the individual's abandonment of the property would have been tainted by the unconstitutional stop. *Id*. at 899.

Here, the undersigned finds reasonable suspicion existed for Officer Brown to conduct a brief investigatory stop of Defendant once the cumulative effect of viewing Defendant conversing with a female (who was known to Officer Brown to be a prostitute) and Defendant's rapid flight upon noticing Officer Brown occurred. As in *Wardlow*, the undersigned finds Defendant's unprovoked flight upon seeing Officer Brown, combined with the fact Defendant was in a high crime area conversing with a known prostitute, gave Officer Brown reasonable grounds to conduct an investigatory stop under *Terry*.

Since Defendant's initial stop was not unreasonable, Defendant cannot show his abandonment of the firearm was involuntary pursuant to an unlawful stop.

Alternatively, the undersigned finds Defendant does not have standing to contest the seizure of the firearm in the first place because he abandoned the property while fleeing from Officer Brown. Under the facts of this case, the undersigned finds *U.S. v. Tinoco*, is

instructive. 304 F.3d 1088 (11th Cir. 2002).

In *Tinoco*, a U.S. Coastguard cutter approached a vessel that appeared to be smuggling narcotics. *Id*. at 1091-93. As the Coastguard cutter activated its lights and deployed a smaller boat to board the suspected drug smuggling vessel, the individuals aboard the suspicious vessel began throwing items overboard. *Id*. The items were later discovered to be bails of cocaine. *Id*.

The Eleventh Circuit held that, regardless of whether reasonable suspicion for the stop was present, the defendants in *Tinoco* had no standing to contest the seizure of the drugs because they abandoned the property by throwing the contraband overboard while in flight. *Id*. at 1117 (*citing California v. Hodari*, 499 U.S. 621, 629 (1991) (holding officers may seize any contraband that a fleeing suspect discards during flight because the suspect has abandoned the property)). The Court in *Hodari*, stated that a suspect in flight has not been seized until he is actually apprehended and detained; therefore, any property abandoned *during flight* cannot be the fruits of an unlawful seizure. *Hodari*, 499 U.S. at 629 (*emphasis added*).

Here, the facts clearly show that defendant was fleeing Officer Brown from the moment he saw him, and that he continued to flee even after being told to stop. Accordingly, the undersigned finds that, in addition to there being reasonable suspicion for the initial stop, Defendant was not seized by Officer Brown until he actually relented to Officer Brown's authority. Since Defendant abandoned the firearm before he was seized, the undersigned finds Defendant does not have standing to contest the seizure of the abandoned property.

Concerning Defendant's motion to suppress his incriminating statements, made to Officer Brown both before and after being *Mirandized*, the undersigned finds the motion is due to be denied for the following reasons.

First, the evidence reveals that the statements Defendant made prior to being *Mirandized* were spontaneous and blurted out voluntarily. As such, these statements need not be suppressed. *See U.S. v. Smith*, No. 1:07-cr-54-WSD, 2008 WL 746546, at *7 (N.D. Ga. March 18, 2008).[4] *Miranda* warnings are necessary prior only to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 445-46 (1966).

Second, concerning the statements Defendant made to Officer Brown after being *Mirandized*, the undersigned finds Defendant knowingly and voluntarily waived his right to remain silent by continuing to make incriminating statements even after he was made aware of his constitutional right to remain silent. As stated *supra*, the undersigned finds Officer Brown's testimony credible. Officer Brown testified that he *Mirandized* Defendant from a card, and that afterward, Defendant continued to make incriminating statements. The undersigned notes that Defendant has produced no evidence to the contrary. Moreover, Defendant speaks English and, as a convicted felon, is familiar with the criminal justice system. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). Accordingly, the undersigned finds Defendant's statements were made knowingly and voluntarily after being *Mirandized*, and as such, are admissible evidence.

[4] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

## III. Conclusion

For the aforementioned reasons, the undersigned finds Officer Brown had the requisite reasonable suspicion to conduct an investigatory stop under *Terry*. Moreover, the undersigned finds Defendant abandoned the firearm while in flight; therefore, Defendant does not have standing to contest the seizure of the firearm. Additionally, the undersigned finds Defendant's incriminating spontaneous statements are not due to be suppressed because spontaneous statements are not protected by the Fifth Amendment. Furthermore, the undersigned finds Defendant's statements made after being *Mirandized* were made knowingly and voluntarily, and thus, are admissible evidence.

## IV. Recommendation

Accordingly, and for the reasons stated herein, the undersigned **RECOMMENDS:**

Defendant's Defendant's Motion to Suppress Physical Evidence and Statements (Doc. #48) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 1st day of April, 2008.

Thomas E. Morris

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record